S. H. MILLER, *Trustee, v.* THE DELAWARE INSURANCE COMPANY OF PHILADELPHIA.

(Filed March 4, 1904.)

CONTRACT OF INSURANCE—Severable, When. Where an insurance policy is issued, and different classes of property are insured, each class being separated from the others and insured for a specific amount, and there is a breach of the conditions of the contract as to one class of the property insured, the contract should be considered as not one entire in itself, but as one which is severable, and in which the separate amounts specified may be distinguished, and a recovery had for one or more of them with-

out regard to the other, provided the contract is not affected by any question of fraud, act condemned by public policy, or any increase of the risk of the company on the whole property insured because of the breach.

(Syllabus by the Court.)

*Error from the District Court of Custer County; before C. F. Irwin, Trial Judge.*

R. N. *McConnell,* W. H. *Criley* and *Shartel, Keaton & Wells,* for plaintiff in error.

*Howard* and *Ames,* for defendant in error.

Opinion of the court by

PANCOAST, J.: This action was brought in the court below by the plaintiff in error as trustee of the bankrupt estate of one J. R. Graham. The defendant, the Insurance Company, wrote a policy of insurance on the property of Graham, insuring him in the sum of $1,725.00 against loss by fire, for one year, and apportioned the insurance as follows: $225.00 on his one story building, $250.00 on his store furniture and fixtures, counter, shelves, etc., and $1,-250.00 on his stock of general merchandise located in the building. The entire property was destroyed by fire.

It is agreed that at the time of the fire, the building was of the value of $1,200.00, furniture and fixtures $400.00, and the stock of merchandise $8,500.00. All conditions as to proof of loss and other matters are agreed upon, leaving in the case but one proposition to be decided, which arises out of one of the provisions of the policy, which is as follows:

"1.   The assured will take an itemized inventory of the stock hereby insured at least once in each calendar year, and unless such inventory shall have been taken within

twelve (12) calendar months prior to the date of this policy, the same shall be taken in detail within thirty days after said date, or this policy shall be null and void from and after the expiration of said thirty days, and upon demand of the assured within three months from the date of this policy, the unearned premium for the unexpired time of this policy shall be returned.

"2.    The assured will keep a set of books which shall clearly and plainly present a complete record of the business transacted, including all purchases as well as shipments of said stock, both for cash and credit, from the date of the inventory, provided for in the first section of this clause, and during the continuance of this policy.

"3.    The assured will keep such books and inventories and also the last preceding inventory securely locked in a fireproof safe at night and at all times when the building mentioned in this policy or the portion thereof containing the stock described therein, is not actually open for business; or failing in this, the assured will keep such books and inventories at night and at all such times in some place not exposed to fire which would ignite or destroy the aforesaid building; and in case of loss, the assured specifically warrants, agrees and covenants to produce such books and inventories for the inspection of this company. In the event of failure on the part of the assured to keep and produce such books and inventories for the inspection of said company, this entire policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

It is not contended here that the stipulation contained in the record upon which the case was tried shows a compliance with the clause of the policy just set forth, and by reason of the failure of the assured to comply with this clause of the policy, it is claimed on behalf of the Insurance Company that the entire policy became null and void, and

that no recovery whatever can be had thereon; while on the other hand, it is conceded that nothing can be recovered on account of the loss of the stock of merchandise, but it is contended that the policy is severable, and while no amount can be recovered because of the loss of merchandise, yet the plaintiff in error is entitled to recover for the loss of the building and the furniture, counters, shelves, etc.

An examination of the authorities shows that courts are to some extent at variance upon this proposition, one line holding that the general rule, "Void in part, void *in toto*" should apply to these cases, while another line holds that forfeitures are not favored in law, and will not be enforced if any reasonable interpretation can be made which will prevent them.

The authorities applying this last rule hold that a policy insuring various classes of property, describing each separately and specifying separate amounts on each class, is not avoided by a breach of the contract as to any property included therein, except that covered by the forfeiture clause, which in this case is that which was required to be inventoried, and a record made of the business concerning which books of account were required to be kept.

This question is presented for the first time in this court, and a rule must be laid down which will probably be followed hereafter in this Territory. The question is, therefore, one of more than ordinary importance.

It seems that this forfeiture clause is not embodied in the main printed matter of the policy, but is contained in what is termed "The inventory and iron safe clause," which is attached to all policies covering stocks of merchandise;

and when policies are issued which do not cover stocks of merchandise, this "Inventory and iron safe clause" is not attached.

This "Inventory and iron safe" provision is intended to have reference only to such articles of merchandise as constitute stock in trade, and the purpose of the clause is to provide evidence from which to determine what the actual loss sustained is, in case of fire.   The store fixtures and furniture, as well as the building, were never designed to be inventoried or covered by the inventory clause.   To make an inventory of the furniture, fixtures and building would in no way to furnish any evidence of the amount of the loss sustained.   General merchandise, however, is a character of property which is at all times changing.   The amount of stock in trade on hand one day is but little, if any, evidence of what may be on hand at another time.   Upon the one hand, the stock is being depleted by sales made, while upon the other, it is being replenished by purchases.   All business men know that the amount of stock kept by any merchant fluctuates very materially, and it is but a reasonable business requirement that proper inventories be made and proper books of account be kept, in order that in case of loss, there may be some satisfactory evidence as to what was the value of the property destroyed.   On the other hand, buildings and other property which is not being depleted and restored as is the case with merchandise, do not require the making of inventories and keeping books of account.

Hence, when policies are issued which do not cover merchandise, this "Inventory and iron safe" clause is not at-

tached, because it would be of no benefit whatever to either party to the contract. This being so, and forfeitures not being favored in the law, a large majority of the courts have held policies to be severable which cover different classes of property, and in which there is a distinct and separate amount placed upon each separate class, when the contract is not affected by any question of fraud, unlawful act condemned by public policy, or increase of the risk on account of the breach, on the whole property insured, and that no recovery can be had on such policies in case of a breach, for that part of the property covered by the forfeiture clause, but that recovery can be had for all other property covered by the policy.

The cases which uphold the rule last mentioned are: *Western Ins. Co. v. Stoddard,* [Ala.] 7 So. 379; *Manchester Fire Ins. Co. v. Feibelman,* [Ala.] 23 So. 759; *Firemen's Fund Ins. Co. v. Barker,* [Col.] 41 Pac. 514; *Commercial Ins. Co. v. Anna Spanknebble,* 52 Ill. 53; *Hartford Fire Ins. Co. v. John Walsh,* 54 Ill. 164; *Phoenix Ins. Co. v. Pickle,* [Ind.] 21 N. E. 547; *Rogers v. Phoenix Ins. Co.,* [Ind.] 23 N. E. 498; *German Ins. Co. of Freeport v. York,* [Kan.] 29 Pac. 586; *Continental Ins. Co. v. Ward,* [Kan.] 31 Pac. 1079; *Kansas Farmers' Ins. Co. v. Saindon,* [Kan.] 36 Pac. 983; *Mitchell v. Missisippi Home Ins. Co.,* [Miss.] 18 So. 86; *Loehner et al. v. Home Ins. Co.,* 17 Mo. 247; *Trabue et al. v. Dwelling House Ins. Co.,* 25 So. 848; *Wright v. Fire Ins. Asso. of London,* 19 L. R. A. 211; *State Ins. Co. v. Shreck,* [Neb.] 43 N. W. 340; *German Ins. Co. v. Fairbank,* [Neb.] 49 N. W. 711; *Johansen v. Home Fire Ins. Co.* 74 N. W. 866; *Home Fire Ins. Co. v. Bernstein,* [Neb.] 75 N.

W. 839; *Merril v. Agricultural Ins. Co.,* 73 N. Y. 452; *Coleman et al. v. New Orleans Ins. Co.,* [Ohio] 31 N. E. 279; *Roberts et al v. Sun Mutual Ins. Co.,* [Tex.] 35 S. W. 955; *Sun Mutual Ins. Co. v. Tufts et al.,* [Tex.] 50 S. W. 181; *Loomis v. Rockford Ins. Co.,* [Wis.] 45 N. W. 813.

The principal courts holding the contrary doctrine are those of Minnesota and Iowa, while Vermont has also held that where the contract is affected by some "all-pervading vice, it is void *in toto.*"

We think that the rule should be established here that where by a policy different classes of property are insured, and each is separated from the others and insured for a specific amount and there is a breach of the contract as to one class of the property insured, the contract should be considered not as one entire in itself, but as one which is severable, and in which the separate amounts specified may be distinguished, and a recovery had for one or more of them without regard to the other, provided the contract is not affected by any question of fraud, unlawful act condemned by public policy, or any increase of the risk to the company on the whole property insured, because of the breach.

Some of the cases cited above do not arise out of a condition entirely parallel with the one under consideration, but the principle is the same in all.

In those cases in which the question of fraud, acts condemned by public policy, or increase of risk is involved, the court discusses the proposition arising in cases similar to the one here.

This rule we think is sound, just and fair to all parties. In this case, separate policies could have been written,

covering the several classes of property insured, but for convenience' sake, different classes of property are covered by the one policy, and specific amounts placed thereon.   When property is listed and insured in this way, the contract should be considered as to each specific amount as though that were the only amount contained in the policy.

It follows that the trial court erred in rendering judgment in this case.   The judgment should have been for the plaintiff in error in the sum of four hundred seventy-five dollars ($475.00), being the amount in the policy apportioned to and covering the building, furniture, fixtures, counters, shelves, etc.

We perhaps ought not to conclude this opinion without noticing more specifically the contention of defendant in error as to the word "entire" contained in the "Inventory and iron safe" clause, if for no other reason than for the energy displayed by counsel in his argument on this provision of the contract.

After admitting that it would be futile to do otherwise than to admit that by far the greater number of cases to be found in the books hold that a contract of insurance is divisible, counsel's every sentence glistens with the energy displayed in treating the subject, and he plainly shows that he has no patience at all with the courts which have held against his contention on this subject.   Beyond that, he says the contract as contained in this record has never been construed, to his knowledge; that the wording of the contracts under consideration by the courts in several cases cited, did not contain the language used in this contract, in this, that because of the use of the clause "This entire policy shall

become null and void," the contract is not divisible, and
that because of this clause, the meaning of the contract as
a whole is changed from those considered by the several
courts referred to.   He argues that the word "entire" has no
limitation as here used, and that no qualification can be
found; that all of the words which were previously held to
qualify had been omitted, and that it stands without limi-
tation or qualification, meaning the whole and every part of
the contract; that it was framed expressly for the purpose
of making it free from doubt; that it belongs to the entire
policy; that it is of recent origin, and is attached to every
country risk, and is stripped of every word that has pre-
viously been held to warrant the courts in holding the con-
tract divisible.

We think that the word "entire," as here used, does not
warrant a change of construction in this class of contracts
from that laid down by the courts referred to, and that which
we have used here, and we feel quite sure that this clause is
contained in the policies in the cases considered by some of
the courts, particularly in *Loehner et al. v. Home Insurance
Company, supra.*   In that case, the court says a policy in-
suring separate amounts on a building and its contents is
not avoided as to the personalty by a forfeiture of the in-
surance on realty, caused by a change in the title thereto,
though it provided that the *entire* policy be avoided by any
change in the title to the subject of insurance.   If, as is
indicated by counsel's argument, this clause was placed in
this slip of paper for the purpose of avoiding the construc-
tion placed upon those clauses used for a similar purpose,
and it was calculated that this peculiarly worded clause

would carry greater protection to the insurance company than was fair, just and equitable, then the courts will hesitate to so construe the language as to give an insurance company an unfair advantage.

If the building, stock of merchandise and store fixtures in this case had each been covered by separate policies, two of those policies would not have carried this clause, and two of those policies could have been recovered upon, even though the third could not.

As stated before, the purpose of the clause evidently was to provide evidence to show the loss sustained, and counsel is in error when he claims that the purpose of the clause was to provide against fraud. Fraud would vitiate the contract regardless of any such provision, and a proper protection to the company would not require any such condition to be inserted in the contract.

So far as this record shows, and no doubt it is a fact, the failure to make this inventory and to keep the books of account as provided in the contract was an act of negligence on the part of the assured. He was the only person who suffered thereby. A failure to observe that feature of the contract in no way added to the liability of the company or its risk.

Having reached the conclusion herein stated, the judgment of the trial court must be reversed. The trial court is therefore directed to vacate the judgment rendered, and to enter judgment in favor of the plaintiff in error for the sum of four hundred seventy-five dollars ($475.00) and costs.

Irwin, J., who presided in the court below, not sitting; Burford, C. J., absent; all the other Justices concurring.