(91 N. W. Rep. 72.)

---

### MAY V. THOMPSON *vs.* TRAVELERS' INSURANCE COMPANY.

---

**Life Insurance Policy—Forfeiture.**

A life insurance policy contained the following provision: "This policy shall not take effect unless the first premium is actually paid while the insured is in good health." The policy was issued on September 4, 1900, upon an application dated August 23d. The policy was delivered to a third party on September 15th, for delivery to the insured, at the request of the insured, said third party having paid the premium at the request of the insured. On September 28th the insured died from a sickness claimed to have existed before September 15th. The premium paid on September 15th to the agent was received at the main office on October 12th. The company had no notice until about October 15th, and after insured's death, of any change in insured's health since he made his application for insurance. *Held,* that the company is entitled to interpose such defense without a tender or payment back of the premium.

**Waiver.**

*Held,* further, that receipt and retention of premiums with knowledge of forfeiture of policy or of defenses against an action on the same is ordinarily a waiver of such forfeiture or defense.

**Return of Benefits.**

*Held,* also, that the rule in equity actions to cancel or annul contracts, that the party moving must return everything of value received pursuant to the contract, is not applicable to the facts of this case.

**Evidence—Error.**

On the trial an answer was allowed to the following question, duly objected to: "Did the defendant corporation, * * * or any one of them, pay back to you the $53.24?" *Held* prejudicial error for which a new trial will be granted.

Appeal from District Court, Barnes County; *Glaspell, J.*

Action by May V. Thompson against the Travelers' Insurance Company. Judgment for plaintiff. Defendant appeals. Reversed.

*John E. Greene,* for appellant.

*Winterer & Winterer,* for respondent.

MORGAN, J. On the 23d day of August, 1900, the plaintiff's husband, Horace S. Thompson, made an application for a policy of life insurance in the defendant company for the sum of $2,000. On the 4th day of September following the policy was issued to said Horace S. Thompson pursuant to such application, and sent to the local agent of the company at Valley City, N. D., and received by said agent on September 11th. On the 15th day of September the policy was delivered to one Tracy for said Thompson, upon payment by him on that day, through said Tracy, of the premium, amounting to the sum of $53.24. The policy was made payable to plaintiff in the event of the death of said Thompson. He died on September 28, 1900. Proofs of death were made on October 15, 1900. Payment under the policy was refused by the company, and this suit followed. The complaint states a cause of action against said defendant for the recovery of $2,000 by virtue of said policy and the death of said Thompson while such policy was in force. The answer to said complaint alleges as a defense the following facts, viz.: "That the said policy of insurance so delivered to and accepted by, said Horace S. Thompson contained a provision in the following words: 'This policy shall not take effect unless the first premium is actually paid while the insured is in good health.' That in truth and in fact the said Horace S. Thompson was not in good health on the date of the payment of said premium, but, on the contrary, he was at that time suffering from bodily injuries sustained, and with disease contracted, subsequent to the date of his application for the policy aforesaid, from which he did not thereafter recover, and from which, one or both, on the 28th day of September, 1900, he died. That this defendant had no notice or knowledge of the fact of said Thompson being so in ill health until the proofs of death above mentioned were submitted to it, to-wit, on or about the 15th day of October, 1900." A trial resulted in a verdict in favor of the plaintiff. A motion for a new trial was made upon a statement of the case duly settled, and the motion was denied. Judgment was duly entered on said verdict. The defendant has appealed to this court from such judgment, and assigns errors, in substance, as follows: Errors in the admission of evidence; in refusing to direct a verdict for the defendant at the close of the evidence; the insufficiency of the evidence to justify the verdict; and the refusal to grant the motion for a new trial.

On the trial the issues that were contested were (1) whether said Thompson was in good health on September 15th, when the premium was paid by, and the policy delivered to, the said Thompson;

(2) whether the retention of the premium by the company was a waiver of its right to assert that the policy of insurance was never in force by reason of that condition in the policy set forth in the answer.

We will consider the last-mentioned question first, and to do so will require a further statement of the facts to be given in addition to those already recited. About September 1st the insured was injured in a runaway accident, resulting in a broken rib. A doctor treated him for such injury by applying bandages on two occasions when the insured visited the doctor's office. The insured made a trip to St. Paul between the dates of these two treatments, and remained there three or four days, returning on September 10th. On September 13th he was suffering from a dull headache, and was in bed a part of the time only. On the evening of that day he made arrangements with his friend Tracy to pay the insurance premium and procure his policy on the following Saturday, in case his health or the weather prevented his going to Valley City, as he then intended to do. He did not go to Valley City, and Mr. Tracy did as requested. On Sunday night his headache became very severe, and a doctor was sent for in the morning of Monday the 17th and visited him on the same day. He thereafter had the insured under his care as a physician, and visited him at times until his death, on the 28th. The agent of the defendant received the premium on the 15th of September, and sent it to the St. Paul office, and in due course of business it was received at the main office of the company at Hartford, Conn., on October 12, 1900. It is beyond dispute that neither the agent of the company at Valley City nor any of the officers of the company had any knowledge of the insured's health on September 15th, except such as was communicated to said agent or officers of the company by the application for insurance of August 23d. Neither the agent nor the company had any knowledge of the broken rib, or of any sickness of the insured, when the premium was paid, on September 15th. The proof of death was made out in Valley City on October 15th, and sent to the company at Hartford, and on receipt of such certificate of death the company first learned of any change in insured's health from that indicated in his application for insurance. It is apparent, therefore, that neither the company nor its agent had any knowledge that there had been any change in the condition of insured's health from that as represented in the application at the time the premium was paid to or received at the main office at Hartford. At the time of receiving such knowledge of change of health it also received knowledge that the insured had died. So that the question of the waiver of defenses by virtue of receiving premiums with knowledge of facts that the policy is void or has never been a binding contract with the company for any cause is not involved in this case, as the company accepted such premium in ignorance of any change in the physical condition of Thompson since August 23d. The authorities uniformly hold that the acceptance of the premium under such cir-

cumstances does not constitute a waiver of a forfeiture or other defense, and the same may be pleaded in avoidance of all claims under the policy when suit is brought upon it. Joyce, Ins. § 1369; *Insurance Co.* v. *Wolff*, 95 U. S. 326, 24 L. Ed. 387; *Bingler* v. *Insurance Co.*, (Kan.) 61 Pac. Rep. 672.

In this case the premium was not accepted with knowledge that the conditions of the policy as to the health of the insured at that time were not true. The insured was dead, and the contract was at an end, except as to actions thereon, before the agent or the company had knowledge that the policy never existed as a binding contract. The question is thus presented, however, whether the company can now interpose the defense claimed without returning or offering to return the premium paid. At the death of the insured, on September 28th, the rights of the insured and of the insurer became fixed. No new contract between the parties by a waiver or an estoppel could be created, as one of the contracting parties was dead. The case is not parallel as to its facts with one where the premium was paid by an insured upon a policy which the insurer is endeavoring to cancel through an action in a court of equity. In such a case, a return, or an offer to return, everything of value received under the policy must be made at or before the commencement of the action. This is based upon the equitable principle that a person will not be allowed to retain anything in an action which he brings to cancel a contract which he repudiates. He cannot be allowed to profit by a cancellation of the policy and by retention of the premiums paid thereon. In this case the defendant is not seeking any affirmative relief. It seeks to establish that there never existed a policy of insurance in favor of the deceased in defendant's company, by reason of the fact that it was delivered under circumstances that by its own terms provided that it should not come into effect. The policy provided that it should not take effect unless the insured was in good health when the first premium was paid. By paying the first premium when not in good health, if such was the fact, the insured violated one of the material stipulations of the policy. Such condition or stipulation was of the very essence of the contract, and a violation of it was in effect a fraud upon the company, whether so intended or not. The insured had been examined as to his physical condition and health, and such examination was satisfactory to the defendant. Under this clause of the policy, the condition of the insured must continue without change up to the payment of the first premium or the policy would not take effect. By applying for such policy and paying the first premium, the insured violated that condition or stipulation of the policy unless he was in good health at that time. "Where a life insurance policy contains a condition to the effect that no obligation is assumed by the company, unless at the date of the policy the insured is alive and in sound health, there can be no recovery upon such policy if it is made to appear upon the trial that the insured was not in sound health at the date of the

policy." *Insurance Co.* v. *Howle,* 62 Ohio St. 204, 56 N. E. Rep. 908. The same principle is upheld in *Plumb* v. *Insurance Co.,* 108 Mich. 94, 65 N. W. Rep. 611. In *Blaeser* v. *Insurance Co.,* 37 Wis. 39, 19 Am. Rep. 747, the following language is used in a case involving the question of the duty of the insurance company to return premiums in actions brought on fire insurance policies claimed to be void by reason of misrepresentations made in the application for insurance: "It is not necessary that the company refund the premium in order to avail itself of this stipulation in the policy. The representations in the application constitute the basis upon which the risk is taken, and the policy declares that if there is any misrepresentation or concealment the insurance shall be void and of no effect. The company enters into the contract relying upon the truth of the representation, and, if it has been misled or deceived upon matters material to the risk, it may well say that no contract was ever made; that there was no concurrence of assent upon the same facts." Cases holding that a retention of the premium after knowledge of facts forfeiting the policy do so upon the ground that by retaining the premium the company has led the insured to believe that he has a valid policy, and the company will not be permitted, to the prejudice of the insured afterwards, to repudiate the policy on account of such forfeiture. In this case no prejudice has or can follow the retention of the premium. When received the insured was dead. The rights of the insured and assured, so far as the policy was concerned, were then established. No new contract could be made by express terms or by reason of any conduct or acts of the company thereafter, so far as the insured was concerned. Waivers are sustained because the insured have been misled to their prejudice. Nothing of that nature appears in this case, and cannot appear, as the insured died before the company had knowledge of any facts that the policy never went into effect, and no premiums were received after such knowledge. *Dowd* v. *Insurance Co.* (Sup.) 1 N. Y. Supp. 31.

There is another reason in this case why the company has waived no right by retaining the premium. The deceased paid the premium. It was his money. If the company was bound to return this premium, it could not have been returned to the insured. There is no evidence that any administrator or executor was appointed for his estate. To whom could the company safely return the money? The record does not show that it could have been returned to any one without incurring the risk of having to pay it again to the legal representative of the deceased when appointed. The defendant was not under obligations to return the premium, and could not have done so to any one lawfully entitled to receive it. Of the cases cited or found, not one goes to the extent of holding that the company is estopped from interposing the defense claimed until the premium is returned. In *Harris* v. *Society,* 64 N. Y. 196, the court held that an offer to confess judgment was all that a company was required to do in cases of suits on policies where forfeiture was

claimed and the premium had not been returned. That was a case of a policy taken out by the husband on the life of his wife. The husband paid the premium, and the company could have returned it to him, but the court held that the company was not estopped from asserting the defense by its failure to do so. The facts of that case do not make it an authority that a return of the premium, if paid by the insured before death, would preclude the company from interposing a defense of forfeiture when no representative of the estate of the insured had been appointed entitled to receive the premium. Nor is *McQuillan* v. *Association*, (Wis.) 87 N. W. Rep. 1069, authority in this case. In that case the premium had been paid by an assignee of the policy with knowledge of the forfeiture, and a return could safely have been made to such assignee. Not one of the numerous cases cited by respondent is in point on the facts of the case at bar. These cases are cases where premiums were paid, accepted, and retained with knowledge of the facts constituting the forfeiture, and of course it was held that the companies were thereafter estopped to plead the forfeiture claimed. With that doctrine this court fully concurs. But we decline to go to the extent of holding that premiums received in ignorance of violations of policy stipulations and without knowledge thereof, until after the death of the person paying them, constitute a waiver of defenses in an action on the policy, when such premiums could not have been returned to any one lawfully entitled to receive them.

On the trial the following question was propounded to the plaintiff: "Did the defendant corporation, the Travelers' Insurance Company, or any one for them, pay back to you the $53.24?" The question was objected to as irrelevant and immaterial, and the objection was overruled, and the ruling excepted to. She answered that the premium had not been paid back nor had any offer been made to do so. This ruling is assigned as error. The objection should have been sustained. The answer was responsive to an issue not properly in the case. The fact of the retention of the premium by the company would be a persuasive argument with the jury that it should pay the policy. That the receipt of this evidence was prejudicial error, under the circumstances of this case, seems too clear for discussion or argument.

For the error in admitting such testimony the judgment is reversed, a new trial granted and the case remanded for further proceedings. All concur.